UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| De'Vonne Turner, | ) | CASE NO. 1:09 CV 788 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Garfield Heights, et al. | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 24). This is a civil rights suit. For the reasons that follow, defendants' motion is GRANTED.

**FACTS**

Plaintiff De'Vonne Turner brings this action against defendants, the City of Garfield Heights and police officer David DuPont, alleging that defendants violated 42 U.S.C. § 1983 by failing to properly train police officers and by subjecting plaintiff to excessive force in violation of the Fourth Amendment. Plaintiff also alleges that defendant DuPont's conduct constituted willful, wanton, and reckless conduct and assault and battery under state law.

1

Plaintiff, along with her friends Mercedes Thomas, Alycia Asbury, and Nicole Nicholson, attended a sixteenth birthday party at the American Legion Hall in Garfield Heights on April 5, 2008. During the party, a fight broke out and someone yelled "Gun!" Adult chaperones at the party called the police, and the party resumed. The Garfield Heights Police Department, including defendant DuPont, received a report that there was a male with a gun inside the hall. Shortly after the police were called, the DJ announced that the party was over and that guests should leave in a single-file line. Another fight immediately broke out and someone screamed, "He's got a gun!" People began rushing to get out of the party. Plaintiff was near the front of the line of people exiting the hall. A few people were in front of her. Plaintiff was directly behind LaShay Medlin. Plaintiff and LaShay were being pushed from behind by the other guests trying to get out of the party. Plaintiff was not being pushed hard enough to lose her balance.

As everyone was rushing to get out of the party, the police were standing outside holding shotguns. Medlin exited the building in front of plaintiff and defendant DuPont nudged her with his gun, while holding the gun horizontally. Medlin fell down but got up right away. Defendant DuPont then moved towards plaintiff and hit her in the right temple with the butt of the gun, which he had raised higher than the barrel end between the time he nudged Medlin and struck plaintiff. The time between defendant DuPont coming into contact with Medlin and then with plaintiff was a split second. Plaintiff became dazed and fell to the ground. Thomas helped plaintiff to her feet and assisted her to her car. Plaintiff sustained a knot on her head that bled after the impact. She later drove her friends home.

Defendant DuPont did not tell plaintiff to stop, give plaintiff any instructions, or say

2

anything at all to plaintiff prior to striking her. He did not at any time acknowledge that she came into contact with his gun. Plaintiff does not know if defendant DuPont intended to hit her, nor does she know that he even knew that he struck her with his gun. Defendant DuPont stated in his affidavit that he did not intentionally hit anyone with his shotgun and was completely unaware of his shotgun coming into contact with any of the party guests.

The complaint contains four claims for relief. Count one is a claim against defendant DuPont for a violation of 42 U.S.C. § 1983 due to his excessive use of force in violation of the Fourth Amendment. Count two is a claim against defendant Garfield Heights for failure to adequately train and supervise its police force. Count three is a claim against defendant DuPont for willful, wanton, and reckless conduct. Count four is a claim against defendant DuPont for assault and battery.

Defendants now move for summary judgment on all counts of the complaint, arguing that defendant DuPont has qualified immunity on plaintiff's federal claim, that plaintiff has not shown an official custom or policy that serves to deprive an individual of constitutional rights, and that defendants are entitled to sovereign immunity on the state law claims. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)). *See also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material fact rests with the moving party:

3

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). A fact is material only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden shifts to the nonmoving party:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 255). *See also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

Summary judgment is appropriate when a party who bears the burden of proof at trial fails to make a showing sufficient to establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). When the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must

4

be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252). Moreover, if the evidence is "merely colorable" or is not "significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

### A. Excessive Force Claim

Qualified immunity protects a government official from liability for damages if the official's conduct in performing a discretionary function does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan,* 129 S. Ct. 808, 815 (2009); *Schreiber v. Moe,* 596 F.3d 323, 329 (6th Cir. 2010). Qualified immunity is immunity from suit rather than a mere defense to liability, and "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson,* 129 S. Ct. at 818 (citing *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). To determine whether a government official is protected by qualified immunity, a court must determine whether the plaintiff has shown facts that constitute the violation of a constitutional right, and whether that right was clearly established in the context of the case. *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). A court has discretion in deciding which prong of the analysis to address first. *Id.* at 818.

The Court will first address whether plaintiff has shown facts that constitute the violation of a constitutional right. The parties dispute whether the Fourth Amendment or the Fourteenth Amendment applies to plaintiff's claim. The Fourth Amendment protects individuals from unreasonable searches and seizures. "It is established law that if the incident out of which

litigation arises is neither a search nor a seizure, an excessive-force claim will not be analyzed under the Fourth Amendment." *Ciminillo v. Streicher,* 434 F.3d 461, 465 (6th Cir. 2006).[1] The Supreme Court has defined seizure:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied.

*Brower v. County of Inyo,* 489 U.S. 593, 596-97 (1989).

Defendants argue that plaintiff was not seized because she was able to walk away unhindered after she was struck by defendant DuPont's gun, she did not receive any instructions from defendant DuPont, and because she has not shown that he intentionally struck her. Defendants also point out that defendant DuPont has stated he did not intend to seize plaintiff.

Plaintiff responds that defendant DuPont's statement he was unaware of his gun coming into contact with any of the party guests is self-serving and disingenuous, given that he hit her with such force that she dropped to the ground in close proximity to him. Plaintiff argues that at the very least, defendant DuPont should have felt some type of impact that would put him on notice that something happened. Plaintiff also argues that it is obvious that she was seized and argues that defendant DuPont "purposefully struck her with his shotgun and stopped her movement."

Upon review, the Court finds that when taking the evidence in the light most favorable to plaintiff, the Fourth Amendment does not apply to plaintiff's claim. Plaintiff was not seized.

---

[1] Plaintiff does not assert that she was subject to an unreasonable search.

Plaintiff has provided no evidence that defendant DuPont terminated her freedom of movement through means intentionally applied.  Plaintiff testified as follows:

> Q	Did the officer at any time even acknowledge that you had come in contact with his gun?
>
> A	No.
>
> Q	Do you even know that he knew?
>
> A	I don't know. After that, I blacked out.
>
> Q	My question is do you know if the officer even knew that your temple came in contact with any part of the gun that he was holding?
>
> A	I'm not sure.
>
> Q	Okay. As you sit here today, you can't say that the officer did know that any part of his gun came in contact with any part of your body, can you?
>
> A	I'm not sure.

(Turner Depo., 35:16-36:7.)  Plaintiff further testified that she was not sure that defendant DuPont intended to hit her.  (Id. at 37:16-20.)  Although she then testified that the incident could not have been an accident, this statement was based solely on her belief that "there's no way you can hit somebody in a temple by an accident with the end of a gun."  (Id. at 38:6-8.)[2]

Plaintiff cites to *Jefferson v. Lewis,* 594 F.3d 454, 462 (6th Cir. 2010) and argues that the Court

---

[2] Plaintiff offers an affidavit with her brief in opposition that states: "It is my opinion, through firsthand observation, that Officer DuPont purposefully rushed up to me and Lashay.  It is, also, my opinion that Officer DuPont purposefully shoved Lashay and then raised the butt end of the shotgun to hit me in the head."  The affidavit, however, is unsigned and the Court cannot consider it.  Even if it were signed, it contradicts plaintiff's earlier detailed testimony at her deposition.  It appears to be offered solely to rebut defendant DuPont's statement that he did not intentionally hit plaintiff with his gun, and as such is not significantly probative.

"may not simply accept what may be a self-serving account by the police officer" and must "look at circumstantial evidence that, if believed, would tend to discredit the police officer's story." Plaintiff, however, has not offered any circumstantial evidence tending to discredit defendant DuPont's testimony. Plaintiff's evidence, in fact, is consistent with defendant DuPont's testimony that he did not intentionally hit anyone and was unaware that his shotgun came into contact with any of the party guests. Accordingly, the Court will not analyze plaintiff's excessive force claim under the Fourth Amendment.

Plaintiff's claim is appropriately analyzed under the Fourteenth Amendment. "[C]onstitutional tort claims asserted by persons collaterally injured by police conduct who were not intended targets of an attempted official 'seizure' are adjudged according to substantive due process norms." *Claybrook v. Birchwell,* 199 F.3d 350, 359 (6th Cir. 2000) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 843 (1998)).

Conduct of a law enforcement officer violates the victim's right to substantive due process when it shocks the conscience. *Id.* at 359. The "shocks the conscience" standard differs depending on the context of the officer's actions. Where an officer has a reasonable opportunity to deliberate various alternatives prior to selecting a course of action, the officer's action will shock the conscience if it was taken with deliberate indifference to a plaintiff's federally protected rights. *Id.* On the other hand, in "a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation," an officer's action will shock the conscience "only if [it] involved force employed 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline[.]'" *Id.* (quoting *County of Sacramento,* 523 U.S. at 853).

The parties dispute the context of the situation at the American Legion Hall the night of the party.  Defendant argues that it was a rapidly evolving, fluid, and dangerous predicament, as the hall was extremely crowded, a fight had erupted, and people were rushing and shoving to get out of the building.  Plaintiff argues that defendant DuPont had a reasonable opportunity to deliberate alternatives, as the police had established a perimeter around the building that would prevent anyone from leaving the area, an adult was at the door thwarting people from rushing to exit the building, and that the police had information the suspect was a boy, making defendant DuPont's actions in "rushing up" to two girls uncalled for.

The Court finds that the situation was rapidly evolving, fluid, and dangerous.  The police received a report that a male had a gun.  As plaintiff testified, a fight broke out.  People were rushing to get out of the door, pushing one another and coming down the stairs.  It was during this rush that the incident took place.  (Turner Depo., 25:5-20.)  Although an adult was at the door attempting to stop guests from exiting the building, Nicholson testified that a least a "few" guests got out and that "they were like all over the place."  (Nicholson Depo., 28:16-29:13.)  Moreover, it is unclear as to whether the police were aware of the adult's efforts to keep the party guests inside. Thomas testified that "the policemen were trying to like, I guess, try to stop the crowd, because it was a lot.  As I say, it had to be like 100 people plus.  So I think they were just trying to, you know, get everybody out safely and figure out who had the gun.  And I guess in the midst of it, I think he hit her."  (Thomas Depo., 18:22-19:3.)  Defendant DuPont also testified that "a large disturbance took place, and a large group of teenagers began rushing out of the doorway and down the stairs, pushing each other."  (DuPont Aff., ¶ 6.)  Further, defendant DuPont testified that he had to "attempt to establish order."  (Id. at ¶ 7.)

9

Under these circumstances, the Court finds that the appropriate "shocks the conscience" standard to apply is whether defendant DuPont, in striking plaintiff on the temple with the butt of his gun, acted maliciously and sadistically for the very purpose of causing harm. The Court finds that defendant DuPont's actions did not shock the conscience for the same reasons cited by the Court in determining that the Fourth Amendment does not apply to plaintiff's claim. Plaintiff has produced no evidence that defendant DuPont intentionally struck plaintiff or that he was even aware that his gun struck plaintiff. In the absence of such evidence, defendant DuPont's actions cannot be said to be malicious or sadistic. Accordingly, the Court finds that defendant DuPont did not violate plaintiff's constitutional rights, and is entitled to summary judgment on count one of the complaint.

### B. Municipal Liability Claim

Plaintiff's claim that defendant Garfield Heights is liable for a violation of her constitutional rights for failure to train and properly supervise police officers fails in light of the Court's decision that defendant DuPont did not violate plaintiff's constitutional rights. *Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (award of damages against municipal corporation based on action of its officer not authorized when officer inflicted no constitutional harm). Even if the Court concluded that defendant DuPont's action did violate plaintiff's constitutional rights, this claim would still fail because plaintiff has produced absolutely no evidence as to any policy or custom of defendant Garfield Heights, relying instead on the conclusory argument that if defendant DuPont had been trained properly he would not have struck plaintiff with his shotgun. *See Shaw v. Pfeifer,* 295 Fed. Appx. 735, 736 (6th Cir. 2008) (affirming summary judgment for municipality where plaintiff simply asserted that an offending policy existed, without further

10

explanation).  Accordingly, defendant Garfield Heights is entitled to summary judgment on plaintiff's municipal liability claim.

### C. State Law Claims

Plaintiff's state law claims appear to be asserted only against defendant DuPont. Defendant Garfield Heights, however, has argued that it is also immune from liability for such claims, and the Court will address its arguments separately below.

#### 1. Claims Against Defendant DuPont

Government employees in Ohio are immune from liability for actions in connection with a governmental or proprietary function unless the employee's actions were malicious, in bad faith, or wanton or reckless.[3]  Ohio Rev. Code § 2744.03(A)(6)(b).  Defendants argue that this exception does not apply because plaintiff has produced no evidence that defendant DuPont intentionally struck plaintiff or that he was even aware that he struck plaintiff.  Plaintiff argues that in Ohio, whether a government employee acted with malice, in bad faith, or in a wanton or reckless manner is a jury question, and cites to *Harris v. City of Circleville,* 583 F.3d 356, 370 (6th Cir. 2009) (citing *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St. 3d 351, 356 (1994)) in support.

Upon review, the Court finds that defendant DuPont is entitled to statutory immunity on plaintiff's state law claims.  Plaintiff is correct that whether a government employee acted in a wanton or reckless manner is generally a question for the jury.  The Ohio Supreme Court, however, has determined that in the absence of any evidence of such conduct in the record,

---

[3] The parties agree that this provision is applicable and do not argue any other provision of Ohio Rev. Code § 2744.03 applies.

11

summary judgment is appropriate.  *Fabrey,* 70 Ohio St. 3d at 356.  Plaintiff has offered no evidence showing that defendant DuPont engaged in malicious, wanton, or reckless misconduct, or that his actions amount to bad faith.  Plaintiff argues that a jury could conclude that defendant DuPont acted with such a state of mind when he "rushed up to [plaintiff] with his shotgun and struck her in the head with it," and when he "shove[d] one girl to the ground [and] hit Ms. Turner with such brute force that she immediately hit the ground."  Plaintiff is mischaracterizing the testimony of the witnesses in this case.  No one testified that Medlin was shoved or that defendant DuPont rushed up to plaintiff.  The testimony reflects that defendant was not aware that his shotgun struck anyone and that he did not intentionally strike plaintiff.  Under these circumstances, defendant DuPont is entitled to summary judgment on plaintiff's state law claims.

### 2. Claims Against Defendant Garfield Heights

Political subdivisions in Ohio are immune from liability for injury to a person caused by any act in connection with a governmental or proprietary function.  Ohio Rev. Code § 2744.02. Providing police services is a governmental function.  Ohio Rev. Code § 2744.01(C)(2)(a). Exceptions to immunity for political subdivisions include injuries sustained due to:  negligent operation of a motor vehicle by a government employee in the scope of employment; negligent performance of a proprietary function; negligent failure to repair or remove obstructions from roads; and physical defects in buildings used in a governmental function.  Ohio Rev. Code § 2744.02(B).  An exception to immunity also exists wherever the Ohio Revised Code has expressly imposed liability on a political subdivision.  *Id.*  If one of these exceptions applies, the political subdivision may still establish immunity by demonstrating that another statutory defense applies.  *See* Ohio Rev. Code § 2744.03.

Defendants argue that none of these exceptions to immunity apply. Plaintiff does not directly respond to defendants' arguments relating to defendant Garfield Heights' statutory immunity on the state law claims.

Upon review, the Court finds that to the extent plaintiff is asserting the state law claims against defendant Garfield Heights, it is entitled to statutory immunity. No exception to the statutory presumption of immunity applies. Under these circumstances, defendant Garfield Heights is entitled to summary judgment on the state law claims.

As the Court finds defendants are entitled to statutory immunity, the Court finds it unnecessary to reach defendants' remaining arguments concerning the merits of the state law claims.

**CONCLUSION**

For the reasons set forth above, defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/19/10